**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE L. TAYLOR,<br><br>                 Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security Administration,<br><br>                 Defendant. | CASE NO. ED CV 06-01031 RZ<br><br>MEMORANDUM OPINION<br>AND ORDER |

        Because none of Plaintiff's arguments challenging the underlying step-five denial of disability benefits is persuasive, the Court will affirm.

**I.**

**POSSIBLE CARPAL TUNNEL SYNDROME**

        Plaintiff first argues that the Administrative Law Judge "failed to properly consider the medical expert's testimony regarding the diagnosis [*sic*] of carpal tunnel syndrome and the effect that this disorder has on the Plaintiff's use of his upper extremities." Pl.'s Br. at 6; *see id.* at 2-5 (background). As two preliminary matters, the Court notes that (a) Plaintiff frames the issue in a manner that assumes that carpal tunnel syndrome was firmly diagnosed, when, in fact, whether the syndrome was clearly or merely "possibly" diagnosed is the key dispute; and (b) the Administrative Law Judge did find

that, among other "severe" impairments, Plaintiff suffers from peripheral neuropathy and a left-hand disorder stemming from a gunshot wound. *See* Administrative Record ("AR") at 14. The judge relied on the conclusion of the medical expert, Samuel Landau, M.D., in restricting Plaintiff to a limited range of light work, restricting Plaintiff from jobs with more than occasional gross and fine manipulation with the left hand, and no forceful gripping, grasping or twisting with both hands. *See* AR 16-17. Dr. Landau expressly included some of the latter, hand-related restrictions on the mere "*possibility of* carpal tunnel syndrome," as well as a deformity in Plaintiff's left fourth finger. AR 461. Thus, this is not an instance in which the Administrative Law Judge's refusal to find carpal tunnel syndrome ("CTS") resulted in a refusal to apply any hand- or wrist-related work restrictions on a claimant. Rather, the issue is whether substantial evidence supports the underlying finding that Plaintiff did not clearly, rather than possibly, suffer from CTS (and thereby possibly merit even *greater* work-related restrictions on his hand movements). It does.

Plaintiff implies that Dr. Landau opined straightforwardly that Plaintiff had CTS, but the medical expert's testimony was, at best, ambiguous on that question. (As noted above, however, he appears to have given Plaintiff substantial benefit of the doubt by restricting Plaintiff in the use of his hands in various ways – an opinion adopted by the Administrative Law Judge.) The Administrative Law Judge pointedly asked Dr. Landau whether the record contained "sufficient evidence to establish the presence of any medically determinable impairment." AR 458. Dr. Landau answered in the affirmative, listing several impairments (including obesity, diabetes, neuropathy, and an old left-hand injury), but then stating, "The record . . . indicated he *possibly* has bilateral carpal tunnel syndrome." AR 459 (emphasis added). Rather than ignore this ambiguity, as Plaintiff implies, *see* Pl.'s Br. at 6, the Administrative Law Judge confronted it head-on, for he immediately asked Dr. Landau about it and received an explanation, as follows:

| | | |
|---|---|---|
| 1 | Q: | Were you able to determine any – from the record[,] were |
| 2 | | you able to assess whether or not the Claimant has carpal |
| 3 | | tunnel syndrome? |
| 4 | A: | No. I can tell you why. . . . He had an electric diagnostic |
| 5 | | study. And here it is, [exhibit] 15F, on the fifth page |
| 6 | | [corresponding to AR 376]. And [the ambiguity arises in] |
| 7 | | the way the report is written. The interpretation of the – |
| 8 | | Mr. Taylor's complaining of symptoms in his hands, |
| 9 | | which are compatible with the diagnosis of carpal tunnel |
| 10 | | syndrome. So [an] electric diagnostic study was made. |
| 11 | | And that was done August 8 of this year [2005]. It says |
| 12 | | the admiral [*sic*: "abnormal"] study demonstrates . . . |
| 13 | | bilateral media[n] nerve neuropathies [phonetic] at the |
| 14 | | wrists, carpal tunnel syndrome, moderate at the left and |
| 15 | | moderate on the right. And [s]he goes on to say – Dr. |
| 16 | | [Nist] goes on to say, it is unclear that this finding would |
| 17 | | explain his clinical symptoms[,] as the abnormalities are |
| 18 | | fairly symmetric with the left being only slightly more |
| 19 | | prominent than the right. And he has numbness on the |
| 20 | | right [upper] extremit[y] since he was diagnosed with a |
| 21 | | stroke and no numbness on the left extremity, which may |
| 22 | | suggest the media[n] neuropath[y] findings are incidental. |
| 23 | | And she goes on to say there's no electrical – lacks |
| 24 | | evidence of the right cervical neuropathy or finding |
| 25 | | neuropathy. And of course for that matter a stroke. |

AR 459-60 ("[phonetic]" in original).  Later, Dr. Landau testified further about the ambiguity in the CTS evidence, after the Administrative Law Judge asked about Dr. Landau's limitations on Plaintiff's use of his hands:

> Q: And the [limitation to] occasional gross and fine manipulations is referring to the left hand?
> A: Yes, unless he does have bilateral carpal tunnel syndrome, in which case we would refer to the right hand.
> Q: Now, the condition of which [*i.e.*, CTS] we don't have evidence in the record.  Is that correct?
> A: Well, we have – no, *we don't have a proven diagnosis*. We have symptoms.  We have a physician's impression, and we have the electric diagnostic studies which is compatible to [*sic*] that diagnosis.

AR 461-62 (emphasis added).  During cross-examination, Dr. Landau phrased his assessment in a manner slightly more favorable to Plaintiff, but still withheld any view that Plaintiff clearly, instead of possibly, had CTS:

> Q: . . . And as far as the hands are concerned, if we accept this diagnosis of carpal tunnel [syndrome] – well, is there evidence of neuropathy in the hands from the diabetes?  In other words, could that be a factor here, no?
> A: No, I mean, according to the electramax study there was no peripheral neuropathy.  What they found was swollen [INAUDIBLE] across the median nerve at the wrist which is [a] common complication [of] diabetes.  So carpal tunnel certainly would be expected –

|   |   |   |
|---|---|---|
| Q: | I see. |
| A: | – and possible. |

AR 464-65.

Thus, Dr. Landau certainly allowed that CTS was possible, but he would not go further than that, and he explained why not. Plaintiff in essence argues that Dr. Landau actually opined that Plaintiff clearly had CTS, but such is simply untrue. The evidence left the matter ambiguous, as Dr. Landau explained, and the Administrative Law Judge acted within proper bounds, and with substantial evidentiary support, in resolving that ambiguity (much of it, as noted above, in Plaintiff's favor). No basis for reversal or remand appears.

Plaintiff's fourth argument fails along with the first, for he appears to assert that the questions posed to the vocational expert were incomplete because they failed to assume the existence of full-blown CTS. (Plaintiff also points to cross-examination testimony positing a hypothetical claimant with a severe anxiety disorder and noting how such a disorder would further limit the scope of available jobs. But Plaintiff neither (a) based his application for benefits on any mental ailments in the first place, *see* AR 75 (application, listing "diabetes, arthritis, hypertension, liver and kidney damage" as the conditions limiting Plaintiff's ability to work, but no mental ailments), 102 (adult disability report listing similar conditions – and no mental ailments), nor (b) even challenges the Administrative Law Judge's implicit finding that Plaintiff suffers from no significant mental limitations on his ability to work. *See* AR 14 (listing "severe" disorders, none of which is mental).) Again, no basis for reversal appears.

///
///
///
///

## II.

## UNNAMED MEDICAL SOURCE STATEMENT

Plaintiff next asserts that the Administrative Law Judge improperly disregarded a medical record appearing at AR 325-26, in which a person who does not sign or otherwise supply a legible name opined that Plaintiff is disabled. The Court disagrees with Plaintiff. The Administrative Law Judge explained that the statement was from an unknown source and was "not supported by an examination signs and findings, but [instead] appears to have been based solely on the claimant's subjective statements . . . ." Substantial evidence supports those observations, which are valid reasons for discounting a medical source's evidentiary weight, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), particularly where, as here, the claimant's subjective statements themselves reasonably are found less than fully credible, as discussed immediately below.

## III.

## PLAINTIFF'S CREDIBILITY

Plaintiff contends that the Administrative Law Judge erred in finding his subjective complaints less than fully credible. Generally, once a claimant has supplied objective medical evidence of a malady that "could reasonably be expected to produce" some degree of pain or other subjectively-reported symptoms, the Administrative Law Judge may discount the claimant's testimony about the degree of pain, and how that pain affects the claimant's ability to work, only if the judge supplies specific, cogent reasons supported by substantial evidence in the record, *see Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*); *Smolen v. Chater*, 80 F.3d 1273, 1281, 1284 (9th Cir. 1996), sufficient to permit this Court to conclude that the Administrative Judge's disbelief was not arbitrary. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1994). Among other factors, the Administrative Law Judge properly may base credibility findings on a claimant's reputation for truthfulness and any inconsistencies between his subjective account, on the one hand, and, on the other hand, his conduct, routine activities, and reports from

physicians and others about the nature and severity of the claimant's symptoms. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The Administrative Law Judge provided four reasons for partially disbelieving Plaintiff's subjective account: (1) more conservative treatment than what would be expected if his pain truly were as severe as he alleges; (2) "the symptoms alleged are out of proportion to the medical signs/findings"; (3) "symptom magnification was noted in Exhibit 15F/34 [AR 405]; and (4) "the medical expert's testimony indicates that the claimant has the ability to perform light exertional work activities." AR 16. The first and third of these reasons suffice.

Substantial evidence supports the observations that Plaintiff's treatment was conservative, *see*, *e.g.*, AR 219-24, 234, although neither party points out that Plaintiff at least *reported*, at an August 13, 2005 medical visit, that his current hand-and-wrist pain medicines (listed as Flexeril and aspirin) were "just not doing it," and "was given Dilaudid 1mg IM and Teradol 60IM and a prescription for Vicodin p.r.n." AR 374. Similarly, substantial evidence supports the observation of "symptom magnification" by Plaintiff during a December 30, 2004 examination arising from Plaintiff's complaints of right-arm numbness and chest pain. Under the "Neurologic" section of the "Physical Examination" portion of his report, attending physician Samuel Wilson, M.D., noted that –

> Patient appears to display volitional attempts to have decreased motor strength on the right upper and right lower extremity. In fact, he appears to be resisting attempts to fully evaluate his motor strength. He refuses to stand for me, but then will jump back into bed[,] [an action] which appears to have no neurologic basis given his complaint of right lower extremity weakness.

AR 405. Plaintiff notes correctly that the medical expert opined that this behavior by Plaintiff was not knowing, "devious" attempts to deceive – that his symptom magnification

- 7 -

"more likely" arose from a "psychiatric basis" ("I think of that as anxiety") rather than from "a malingering basis." AR 468, 469. But Plaintiff need not be shown to have been knowingly deceitful for his subjective account (and non-verbal behavior during examinations relating to symptoms) reasonably to be discredited. It is enough that, whether "deviously" or not, Plaintiff failed to cooperate properly, and displayed a symptom with "no neurologic basis," during testing that could help to ascertain whether his claimed ailments were as disabling as he asserts.

## IV.
## CONCLUSION

For the foregoing reasons, the underlying decision is affirmed.

DATED: October 18, 2007

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE